STOULIG, Judge.
Plaintiff, Bartholomew A. LaRocca, obtained an $8,000 default judgment against defendant, Owen Burley, representing the contract price and damages occasioned by the defendant’s improper construction of a vinyl-liner swimming pool in LaRocca’s yard. In his original petition, filed May 16, 1973, plaintiff asked that the contract price of $6,015 be reduced by $4,000, his cost to repair the then-apparent defects. However, in the following weeks plaintiff claimed the deterioration accelerated to such an extent that he concluded the pool and its mechanical appurtenances were worthless. On June 29, 1973, a supplemental petition was filed alleging, inter alia, the continuing deterioration of the pool shell and the malfunctioning of the pump, filter and heating system constituted a breach of contract by defendant that caused plaintiff $8,000 in damages. Although domiciliary service of the original and supplemental petitions were obtained on his wife, defendant filed no answer to either pleading.
A preliminary default was entered July 30, 1973; testimony was adduced to confirm it on August 22, 1973; and judgment was rendered in conformity with the prayer of the supplemental petition on September 19, 1973. Domiciliary service of the judgment was obtained on September 28, 1973. After a judgment debtor rule was filed October 31, 1973 and served on November 12, 1973, defendant apparently sought legal counsel for the first time.
This appeal, filed December 17, 1973, addresses itself to two complaints: (1) The supplemental petition upon which judgment was rendered was not validly before the court because of plaintiff’s failure to proceed by contradictory motion, and (2) alternatively, plaintiff did not establish a prima facie case.
Appellant argues that the procedure plaintiff is required to follow in filing a supplemental petition is set forth in LSA-C.C.P. art. 1155, which provides:
“The court, on motion of a party, upon reasonable notice and upon such terms as are just, may permit mover to file a supplemental petition or answer setting forth items of damage, causes of action or defenses which have become exigible since the date of filing the original petition or answer, and which are related to or connected with the causes of action or defenses asserted therein.”
Relying on our decision in Lakeside Rambler Sales, Inc. v. Durad Corporation, 239 So.2d 491 (La.App., 1970), defendant submits the phrase “ * * * on motion of a party, upon reasonable notice * * * ” means a supplemental petition may only be filed with the leave of court granted after a hearing on a contradictory motion.
The Lakeside Rambler case so holds, but it is distinguishable from the matter before us. That was an action for rents due under a lease and for its cancellation. After the filing of exceptions which were re *314 ferred to the merits and the answer, plaintiff obtained an ex parte order authorizing the filing of a supplemental and amended petition which it then served on the defendant. The object of the supplemental pleading was to claim rents that had accrued subsequent to the filing of the original petition. When defendants failed to answer the supplemental petition, despite the fact issue had been joined plaintiff confirmed a default judgment.
In this case, issue had never been joined. Domiciliary service of both the original and supplemental petitions had been made and defendant was fully aware of the claim against him. Had plaintiff dismissed the original petition without prejudice and incorporated all the allegations of the original and supplemental pleadings in a new petition, the same result would have been accomplished. In our view, Article 1155 presupposes the defendant has responded to the original petition in some manner, either through an exception or an answer. We note that under its provisions the defendant is not required to file an answer to the supplemental pleading. Therefore, we hold plaintiff’s supplemental petition was validly before the court.
Before considering the issue of the sufficiency of proof, we note defendant contends he contacted plaintiff’s counsel after the original petition was served and requested an opportunity to repair the pool. Appellant states he was led to believe plaintiff’s attorney would contact him before taking any further action.
Defendant was served with the supplemental petition on July S, 1973. The record contains a copy of a letter dated July 11, 1973, in which plaintiff’s attorney advised Burley to obtain legal assistance to defend the claim and gave him ten days to do so. Burley denies receiving this letter. Thus, when the default was confirmed, appellant contends he was lulled into inaction. This aspect of defendant’s complaint is not properly before us. At best, if provable, defendant’s contention in this respect could possibly form the basis of an action in nullity.
Turning to the merits, we hold plaintiff has established a prima facie case. The pool, completed July 28, 1972, contained defects from its completion. Throughout the next year the concrete shell, over which the vinyl liner was placed, developed severe cracks and several sections crumbled away. Photographs, taken by plaintiff’s wife, depict the cracks and defects in the shell and fully support the testimony of both Mr. and Mrs. LaRocca that the pool is poorly constructed.
William B. Harper, owner and president of Catalina Pools, appeared as an expert on pool construction. He had examined the rapidly deteriorating installation on May 23, 1973 and predicted it would be unfit for use within a year from the time he saw it. The conditions he observed that made the pool worthless were these:
1. There were an excessive number of cracks in the concrete shell beneath the vinyl liner which permitted the entry of dirt.
2. The pool was not level and appeared to be sinking.
3. There was standing water in the deck area due to the want of drains.
4. There were leaks around the filter, the piping and the mechanical seal on the pump.
5. There was deterioration of some of the piping to the gas line where it comes up through the cement.
6. The waste line was not properly tied-in.
In short, it was a total disaster.
Harper testified it would be more economical to fill in the defective pool and construct a new one. He estimated the cost of removal to be between $2,000 and $4,000, or alternatively, between $1,500 and $2,000 to remove the coping and fill in the entire shell.
*315 Appellant challenges Harper’s expertise and has questioned many of the statements upon which his expert opinion is premised. Because these countervailing statements were raised in argument on appeal but form no part of the record, we cannot consider them. We realize appellant’s attorney entered the case at a time when his client had already foregone his right to a defense on the merits and, under the circumstances, has presented a commendable, if unacceptable, argument for his client. Counsel correctly points out there are in evidence two written reports by pool experts who failed to appear in court. Even though these are inadmissible under the hearsay rule, the plaintiff has established his claim through his own testimony and that of his wife and Harper. He proved he paid the $6,015 contract price; the pool was totally defective; and the cost to remove it or to restore the property to its original condition would be at least $2,000.
For the reasons assigned, the judgment appealed from is affirmed; costs to be borne by appellant.
Affirmed.
LEMMON, J., concurs.