1 iPETERS, Judge.
Gary and Theresa C. Lamson, husband and wife, and Alfred and Helen M. Lamson, also husband wife, instituted this suit seeking payment of royalties under an oil, gas, and mineral lease and requesting that the lease be partially canceled. This matter is now before us because Triton Oil & Gas Corp. (Triton), a Delaware corporation, sought relief from a trial court judgment rejecting certain exceptions which addressed the sufficiency of the notice requirements of La.R.S. 31:132 and La.R.S. 31:137. For the following reasons, we reverse the trial court’s judgment and grant Triton’s exception of prematurity.
laDISCUSSION OF THE RECORD
On December 14, 1989, the Lamsons granted an oil, gas, and mineral lease covering the minerals under immovable property situated in Lafayette Parish, Louisiana, to Petroleum Land Services, Inc. (Petroleum Land Services), a Louisiana corporation. By an assignment dated March 13, 1990, Petroleum Land Services assigned all of its interest as lessee under the lease to EM Nominee Partnership Company (represented by Qui-noco Energy Inc. as general partner) and Quinoco Consolidated Partners, L.P. (represented by Quinoco Oil and Gas Inc. as general partner). EM Nominee Partnership Company was assigned seventy percent of the lessee’s interest, and Quinoco Consolidated Partners, L.P., was assigned the remaining thirty percent.
*1083 On November 12, 1990, these assignees executed an act of partial assignment which resulted in the following division of the working interest under the lease:
EM Nominee Partnership Company 24.3250%
Hailwood Consolidated Partners,
L.P. (formerly Quinoco Consolidated Partners, L.P.) . 10.4250%
Unocal Exploration Corporation 40.0000%
TOC Acquisition Corp. 20.0000%
Triton Oil & Gas Corp. 4.9900%
Arlington Exploration Co. 0.2600%
Effective January 1, 1993, Triton transferred its assigned interest to PetroCorp Incorporated (PetroCorp), a Texas Corporation.
For various reasons set forth in the pleadings, on February 16, 1994, Gary Lamson and Alfred Lamson made separate written demands on Unocal Exploration Corporation (Unocal) and Hailwood Petroleum, Inc. (Hall-wood) on behalf of themselves and their spouses “for the prompt and proper payment and accounting of all royalties due [them].” Attached to each of these demand letters was a copy of the |3partial act of assignment of the oil and gas leases dated November 12, 1990, referred to above. The copies reflected that the instrument had been recorded as File Number 91-4042 in the Lafayette Parish Clerk of Court’s office.
On November 4,1994, the Lamsons filed a petition seeking payment of royalties due under the December 14, 1989 lease. They named the following parties as defendants:
Austral Oil Company, Incorporated (Austral), a Delaware Corporation
Union Oil Company of California (Union Oil), a California Corporation
EM Nominee Partnership Company, a foreign partnership
Hailwood Consolidated Partners, L.P., a foreign partnership
Triton Oil & Gas Corp., a Delaware Corporation
Arthur C. LeBlanc, Jr., CPL & Associates, Inc. (formerly Petroleum Land Services, Inc.)
In the petition, the Lamsons sought a full accounting and payment of the royalties under the lease, together with penalties and attorney fees.
In response to the petition, on December 29,1994, Triton filed exceptions of prematurity, no right and cause of action, failure to join a necessary or indispensable party, and lis pendens. These were filed on December 29, 1994. The other defendants also filed responsive pleadings to the petition. On July 2, 1996, the trial court entered an order which dismissed with' prejudice all of the defendants except Austral, Union Oil, and Triton. This order was issued pursuant to a joint motion to dismiss filed by the affected parties on the previous day.
The Lamsons then amended their original petition on May 27, 1997, adding to their prayer for relief a request that the lease be partially canceled. In this amended petition, Triton and Union Oil were listed as defendants and PetroCorp was added as a defendant. Austral was not mentioned. Petro-Corp was listed as the assignee of Triton’s interest effective January 1, 1993. Triton responded to this amendment on June 19, 1997, by filing the same exceptions it had filed to the original petition. Union LOil and PetroCorp also filed responsive pleadings.
After a hearing on September 15,1997, the trial court took Triton’s exceptions under advisement. On September 19, 1997, the trial court rendered written reasons for judgment, denying Triton’s exceptions and stating the following:
The basis of Triton’s exceptions center [sic] around plaintiffs’ alleged failure to comply with the provisions of the Louisiana Mineral Code, requiring that [the plaintiffs] provide written notice to Triton of the alleged non-payment of royalties prior to instituting suit, and the fact that Triton no longer owned the leasehold interest in question at the time of the alleged non-payment.
After consideration of the matter, the Court finds that the Lamson letter dated February 16, 1994 to Unocal Exploration Company was sufficient notice insofar as Triton was concerned. LSA-R.S. 31:137, LSA-R.S. 31:132. Additionally,- the Court finds that Triton is the real'party in interest in this matter, as the Lamsons 'are seeking any and all royalties ■ due, which includes a period of time prior to January *1084 1, 1993, the date that Triton divested itself of all interest in the subject property.
Accordingly, the Court denies Triton’s exceptions.
In a footnote, the trial court further stated:
Notwithstanding the Lamsons’ actual knowledge of the November 12, 1990 partial assignment, under LSA-R.S. 31:132, it was incumbent upon Triton to directly give the Lamsons written notice of the partial assignment in order to exercise its rights under LSA-R.S. 31:137. There is no evidence that this was done.
Triton then applied to this court for supervisory writs requesting review of the trial court’s September 19, 1997 rejection of its exceptions. On January 7, 1998, this court issued an order staying the trial court proceedings and calling the case for argument.
OPINION
A mineral lease grants the lessee “the right to explore for and produce minerals.” La.R.S. 31:114. All or part of the lessee’s interest in the mineral lease may be assigned by the lessee. La.R.S. 31:127. The assignee acquires the rights and powers of the lessee and becomes directly responsible to the lessor for performance of the lessee’s _jBpbligation. La.R.S. 31:128. However, the assignment does not release the original lessee from his responsibility under the lease, absent a written discharge from those obligations executed by the lessor. La.R.S. 31:129.
The basic obligation of the lessee, or his assignee, is “to perform the contract in good faith and to develop and operate the property leased as a reasonably prudent operator for the mutual benefit of himself and his lessor.” La.R.S. 31:122. Included within that basic obligation is timely payment of royalties. La.R.S. 31:123.
La.R.S. 31:132 provides:
An assignee or sublessee is bound by any notice or demand by the lessor on the lessee unless the lessor has been given written notice of the assignment or sublease and the assignment or sublease has been filed for registry. If filing and notice have taken place, any subsequent notice or demand by the lessor must be made on the assignee or sublessee.
(Emphasis added).
Additionally, La.R.S. 31:137 provides that if the lessor’s complaint is the failure of the lessee to make timely or proper royalty payments, “he must give his lessee written notice of such failure as a prerequisite to a judicial demand for damages or dissolution of the lease.”
It is not disputed that the plaintiffs had written notice of the assignment to Triton, and its proper recordation, in the form of a copy of the actual assignment instrument when the February 16, 1990 demand letters were written. However, there is no evidence as to how the plaintiffs acquired this notice. The issue before us is whether, this notice satisfies the requirements of La.R.S. 31:132 so as to trigger the notice requirements of La.R.S. 31:137. The trial court concluded that the notice to the plaintiffs did not satisfy the requirements of La.R.S. 31:132 in that there was no evidence that Triton supplied the notice directly. Based on this conclusion, the trial court further concluded that the plaintiffs’ notice to Unocal was adequate notice to |6Triton pursuant to La.R.S. 31:137. We disagree.
Nowhere in La.R.S. 31:132 does it require that the assignee give the required written notice. It only requires that the lessor be given written notice and that the assignment instrument be properly filed. Additionally, we note that Unocal is not Triton’s ancestor-in-title, and therefore, notice to Unocal does not constitute proper notice to Triton under La.R.S. 31:137.
Even the notice to Hailwood, Triton’s ancestor-in-title, is not sufficient. In accordance with the clear language of La.R.S. 31:132, the plaintiffs had written notice of the transfer to Triton before the filing of this action, and written demand had to be made on Triton pursuant to La.R.S. 31:137. The comments to La.R.S. 31:137 explain that pri- or to its passage, “[t]he area of dissolution of mineral leases for nonpayment of production royalties [had] been one of the most, if not the most confused and unsatisfactory areas *1085 of Louisiana mineral law.” The notice requirement of La.R.S. 31:137 triggers the required response of La.R.S. 31:138, which provides in part: “The lessee shall have thirty days after receipt of the required notice within which to pay the royalties due or to respond by stating in writing a reasonable cause for nonpayment.” Even if the lessee timely responds to this notice by paying the royalties due, the lessor may still be entitled to damages and attorney fees if “the original failure to pay royalties was either fraudulent or willful and without reasonable grounds.” La.R.S. 31:139. However, if the lessee does timely respond, the lessor may not seek dissolution of the lease unless “the original failure to pay was fraudulent.” Id.
The consequences of failing to respond to the notice, as found in La.R.S. 31:140, are more severe. That statute provides:
If the lessee fails to pay royalties due or fails to inform the lessor of a reasonable cause for failure to pay in response to the required notice, the court may award as damages double the amount of royalties due, ^interest on that sum from the date due, and a reasonable attorney’s fee regardless of the cause for the original failure to pay royalties. The court may also dissolve the lease in its discretion.
Thus, Triton should be afforded the opportunity to respond to the notice provided for in La.R.S. 31:137 and avoid the harsh remedy of dissolution, absent fraud on its part.
The comments to La.R.S. 31:137 explain the significance of this notice requirement:
Article 137 contemplates that at any time there has been a nonpayment of royalties, the lessor must notify the lessee. It is not intended that this notice be a demand for performance as in the case of the traditional default under the Civil Code. The lessor may not desire performance. The device of notice, then, is merely to inform the lessee that he has not paid royalties deemed by the lessor to be due. Article 138 gives the lessee thirty days within which to respond to the notice either by paying or stating a reasonable cause for nonpayment. Payment or nonpayment or stating or failing to state a reasonable cause for nonpayment in response to the notice has consequences for lessor and lessee as to the remedies available, as provided in Articles 139 through 141.
We find that the failure on the part of the plaintiffs to give Triton notice pursuant to La.R.S. 31:137 renders this suit premature. See La.Code Civ.P. art. 926(A)(1). The trial court erred in rejecting this exception and in not dismissing the plaintiffs’ suit against Triton. See La.Code Civ.P. art. 933.
DISPOSITION
For the foregoing reasons, the judgment of the trial court rejecting the exception of prematurity filed by Triton Oil & Gas Corp. is reversed, and judgment is rendered herein in favor of Triton and against the plaintiffs, dismissing their suit at their cost. All costs of this appeal are also taxed against the plaintiffs.
REVERSED AND RENDERED.