CHARLES R. JONES, Judge.
|/The defendant/appellant, Cedyco Corporation (“Cedyco”) appeals an adverse judgment by the district court awarding the appellees, Freeport-McMoran Energy L.L.C. (hereinafter referred to as “Free-port”), $270,809.49, plus legal interest. We amend in part, reverse in part, and affirm as amended.
This case concerns two oil and gas leases on property located in Plaquemines Parish. In September of 1976, the owner of the immovable property, Freeport Minerals Company, and is also the alleged predecessor in interest to the appellee Freeport, entered into an agreement with Hilliard Oil and Gas, Inc., to explore and develop properties in Louisiana. Thereafter, on July 23, 1977, Freeport Minerals entered into an oil and gas lease for the well subsequently referred to as the “Plaquemines Parish Commission Council No. 1 Well.”
On January 25, 1978, Freeport Minerals Company and Hilliard Oil and Gas entered into another lease of the property where the “Freeport Sulphur Company No. 1 Well” was drilled, also located in Plaque-mines Parish. The operative |2language of the two leases at issue is identical, the only exception being the site of the two wells.
The subject oil and gas leases identically provide at Paragraph 12 that, when production of oil and gas ceases in paying quantities,
Lessee shall, at its sole cost and expense and within no more than ninety (90) days after the date whereon Lessee ceases actual drilling or reworking operations on said well, plug and abandon said well and restore the surface of the land in and around the location thereof to as nearly the same condition as it was in prior to the commencement of operations for drilling thereof.
As the lessor and alleged successor in interest, Freeport brought this suit to enforce the obligation of Cedyco, as successor of Hilliard Oil. Freeport alleges that Cedyco, as the Gas Company under both leases, had a responsibility to properly plug and abandon the two wells on its land, and to have its property at the well sites properly restored as required by Paragraph 12 of the two leases.
Freeport filed a petition for declaratory judgment, specific performance and damages on June 25, 2008. Therein, Freeport averred that it is the successor lessor of Freeport Minerals Company under both of the subject leases. The petition also set forth that that there had been no oil and gas production from either well “for many years” and averred that Cedyco, as lessee, was required by the terms of the leases to plug and abandon the wells and otherwise restore the well sites upon cessation of production.
In the petition, Freeport also averred that it had made formal demands upon Cedyco to plug and abandon the wells. Freeport further alleged that Cedyco, | ^despite having received demand to plug and abandon the wells, had refused to do so. The alleged refusal of Cedyco to comply with the terms of the lease prompted Freeport to seek damages pursuant to La. C.C. art. 2315. Alternatively, Freeport sought to require Cedyco to plug and abandon the well by specific performance. In addition, the petition of Freeport *816 sought damages for breach of contract, declaratory relief, a demand for attorney’s fees pursuant to La. R.S. 31:207 and La. R.S. 31:209, as well as a claim for statutory penalties.
On August 1, 2008, Cedyco filed a pro se answer which raised an objection to venue in Orleans Parish. In paragraph III of its answer Cedyco stated that it denied each and every allegation that called for payment by Cedyco to Freeport.
On August 15, 2008, fourteen (14) days after Cedyco filed its answer, Freeport filed its motion for partial summary judgment.
On August 27, 2008, Freeport filed a motion to compel Cedyco to answer discovery. On October 8, 2008, the district court issued an order directing Cedyco to answer discovery and other discovery requests of Freeport by October 13, 2008. The district court specifically warned that by its failure to comply with the aforementioned order, Cedyco risked waiving its right to object to interrogatories and requests for production of Freeport. However, by October 14, 2008, Cedyco had failed to comply with the order of the district court. On October 20, 2008, the district court issued an order designating that the right of Cedyco to object to the interrogatories and requests for production of Freeport was waived.
[4A hearing on the motion for partial summary judgment was originally set for September 18, 2008, but was later reset for October 24, 2008. The motion for partial summary judgment of Freeport was unopposed. On October 24, 2008, the district court granted the motion for partial summary judgment of Freeport, and ordered that the two subject leases between the parties be terminated. The judgment of the district court further required Cedyco to plug and abandon both wells, restore the surface of the well site, and provided Freeport with a recordable act evidencing the termination of the leases.
On October 27, 2008, attorney Martin Morgan filed a motion to enroll on behalf of Cedyco. Immediately thereafter, Mr. Morgan filed a memorandum in support of a declinatory exception of improper venue, which Cedyco had originally raised in its answer. The exception alleged that venue was improper in Orleans Parish due to the fact that the petition of Freeport concerned rights in immovable property, and therefore venue would only be proper in Plaquemines Parish, where the immovable property was located.
On November 3, 2008, the district court rendered its judgment denying the exception of improper venue of Cedyco. Nearly three weeks later, on November 21, 2008, Cedyco gave its notice of intent to seek supervisory review concerning the denial of its exception of improper venue. Trial was subsequently scheduled for June 29, 2009.
| sOn February 3, 2009, Freeport filed a motion for sanctions arising out of the failure of Cedyco to comply with the order of the district court compelling discovery. On March 16, 2009, the district court entered a judgment granting the motion for sanctions and ordered Cedyco to pay $1,500.00, and to answer the outstanding discovery.[1]
Subsequently, on March 19, 2009, this Court denied the writ application of Cedy-co which had sought review of the district court judgment denying the exception of improper venue.
On May 26, 2009, Freeport filed a motion to strike the answer to discovery requests of Cedyco and requested entry of *817 judgment by default. Freeport maintained that Cedyco had failed to comply with the prior orders rendered by the district court regarding discovery.
Three days later, on May 29, 2009, Ce-dyco filed an exception of no right of action. Therein, it maintained that Freeport had not sufficiently established that it was in fact the successor in interest to Free-port Minerals Company. Thus, Cedyco maintained that Freeport had no right of action to assert claims pursuant to the leases in question.
After a hearing on June 18, 2009 on the motion and exceptions, the district court denied Freeport’s motion to strike the answer of Cedyco and accompanying request for entry of judgment by default.[2] In addition, the district court also denied the exception of no right of action of Cedyco. However, the district court ordered ^alternative relief and barred Cedyco from presenting any witnesses or evidence of its own at the June 29th trial. The judgment of the district court specifically limited the ability of Cedyco to cross examination the witnesses for Freeport.[3]
Trial commenced as scheduled on June 29, 2009. Freeport presented two witnesses: Mr. Clarence Mascarenhas and Ms. Nancy Parmelee.
Mr. Mascarenhas testified that he was an engineer formerly employed by one of the numerous Freeport entities, but he was currently employed by Crescent Technology, Inc. Over the objections of counsel for Cedyco, Mr. Mascarenhas was permitted to offer testimony about various “proposals” which he had solicited regarding the projected cost of plugging and abandoning the subject wells and restoring the surface sites.
The testimony of Mr. Mascarenhas revealed that none of the plugging and remediation work had been performed. Rather, his testimony revealed that he had solicited “proposals” for the work from various contractors. In addition to introducing the proposals of the various contractors into evidence, Freeport also introduced letters which detailed the amounts of the “proposals” for the work. These proposals were introduced into evidence as Freeport’s exhibits numbered 6, 7, and 8, respectively.
Freeport’s second witness was Ms. Par-melee, senior vice president and chief financial officer of Freeport McMoran Energy. She testified that she was actually employed by “Freeport McMoran Services,” and stated that she was the custodian|7of business records for Freeport. She identified the various demand letters that Freeport had sent to Cedyco requesting that the wells be plugged and abandoned. Through the testimony of Ms. Parmelee, Freeport also sought to introduce documentation concerning the amounts of oil and gas production from the two wells. When counsel for Cedyco objected to the introduction of various hearsay documents by Freeport, counsel for Freeport proffered these exhibits as Freeport’s exhibits 21 and 22, respectively. Ms. Parmelee then testified that the leases provided for a 20% royalty on oil production.
Following the testimony of Ms. Parme-lee, Freeport rested its case. As a result of the prior district court ruling in connection with the motion to strike of Freeport, Ce-dyco was not permitted to call any witnesses or present any evidence of its own.
*818 However, the testimony of Ms. Parme-lee, as now argued by Cedyco, had elicited a claim for the recovery of unpaid mineral royalties allegedly owed by Cedyco. This was despite the fact that Freeport had not set forth a prior demand for mineral royalties from Cedyco in its petition.
Cedyco suspected that the testimony of Ms. Parmelee was directed towards a claim for mineral royalties, consequently counsel for Cedyco asked on the record whether Freeport was asserting a claim for royalties in this litigation. In response to this request for clarification counsel for Freeport, Mr. Rosenblum, replied, “[a]bso-lutely.”
IsCedyco argued that Freeport had previously taken the position that there was no claim for mineral royalties being asserted in this litigation, and that the object of relief for Freeport was merely to cancel the leases. Cedyco noted that if the suit sought only relief for a breach of a contract of lease, then Freeport could argue that venue in this case was governed by La. C.C.P. art. 76.1, rather than art. 80(A)(1).[4] In addition Cedyco argued that by convincing the district court that the case did not involve a dispute regarding mineral rights, Freeport could argue that venue was governed by the broader provisions of La. C.C.P. art. 80(A)(8).[5]
Once again Cedyco re-urged an exception of no right of action. Therein, it still maintained that Freeport had not sufficiently established that it was in fact the successor in interest to Freeport Minerals Company. Thus, Cedyco maintained that Freeport had no right of action to assert claims pursuant to the leases in question.
Particularly, Cedyco maintained that once the case came to trial, Freeport, decided that it did in fact have a claim for mineral royalties. Further, Cedyco urged that the statement during trial by counsel for Freeport indicating that it was “[ajbso-lutely” asserting a claim for mineral royalties, constituted a material misrepresentation.
18In addition to filing its second exception of no right of action, Cedyco[6] filed an exception of prescription. Therein, Cedy-co argued that the claim for mineral royalties by Freeport was untimely because there had not been any oil and gas production from either well in the three (3) years prior to the institution of the litigation. Thus, any claim which Freeport might *819 have had for unpaid royalties would have prescribed.
The exception of no right of action by Cedyco was set for hearing on July 24, 2009. On that date, counsel for Freeport sought to reopen the evidence in order to establish the critical facts which demonstrated how ownership of the two pieces of property had transferred from Freeport Minerals Company to Freeport, thereby establishing that Freeport was indeed the successor/lessor on the two oil and gas leases and that it had a right of action to assert claims in this proceeding. Counsel for Freeport argued that he was permitted to introduce evidence on the exception of no right of action.
Subsequently, counsel for Cedyco withdrew the exception of no right of action, but maintained that Freeport had failed to prove a necessary element of its case. Nevertheless, despite the withdrawal of the exception of no right of action by Ce-dyco, the district court decided to reopen the evidence in order to permit counsel for Freeport another chance to prove its case. At the July 24, 2009 hearing, |Klcounsel for Freeport gave the district court notice that Freeport had decided to “waive” its “right to unpaid royalties.”
On August 20, 2009, following a trial on the merits, and subsequent to Freeport being granted a second opportunity to present evidence in support of its claims at the July 24, 2009 hearing, the district court rendered a judgment in favor of Freeport. The court awarded damages as follows:
• One hundred and five thousand dollars ($105,000.00) to plug and abandon the two wells which were the subject of the oil and gas leases;
• Seventy-four thousand three hundred dollars ($74,300.00) for removal and cleaning of tanks and tank fields;
• Ten thousand dollars ($10,000.00) for an environmental assessment;
• Three thousand seven hundred dollars ($3,700.00) to restore land at the well sites to their original condition; and
• Eighty four thousand eight hundred and nine dollars and forty nine cents ($84,809.49) in attorneys fees and costs;
Thus, the total monetary judgment was two hundred and seventy seven thousand, eight hundred and nine dollars and forty nine cents ($277,809.49), plus legal interest from the date of judicial demand.
This timely appeal followed, wherein, Cedyco raises three (3) assignments of error:
1. The district court erred in permitting Freeport to introduce hearsay opinion evidence regarding its alleged damages;
2. The district court erred in failing to enforce paragraph 19 of the lease which provides that no assignment of the lease by the lessor would be valid until 30 days after notice to the lessee; and
|ri3. The district court erred in awarding nearly $85,000 in attorney’s fees to Freeport, given the fact that no depositions were conducted, the parties engaged in minimal discovery, and the trial lasted less than one day.
“We review the trial court’s ruling under the manifest error or clearly wrong standard, in which the trial court will not be reversed in the absence of clear error. The relevant issue in a manifest error inquiry is not whether the finder of fact was right or wrong, but whether its decision was a reasonable one.” Bosarge v. DePaul/Tulane Behavioral Health Center, 2009-1345, pp. 6-7 (La.App. 4 Cir. 5/19/10), 39 So.3d 790, 795 (citing Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Turnbull v. Thensted, 99-0025, p. 5 (La.App. 4 Cir. *820 3/1/00), 757 So.2d 145, 149.) See also Marino v. Tenet Healthsystem Medical Center, 2009-915 at pp. 3-4, (La.App. 4 Cir. 11/29/09), 26 So.3d 297, 299, writ denied, 2009-2804 (La.3/5/10), 28 So.3d 1012.
In its first assignment of error, Ce-dyco argues that the district court erred in permitting Freeport to introduce hearsay opinion evidence regarding its alleged damages.
The bulk of the award of damages by the district court to Freeport represented the alleged cost of plugging and abandoning the wells and restoring the surface of the well sites. It was undisputed that none of the work had been performed. Rather, the only “evidence” of the cost of this work consisted of “proposals” from third-party contractors which had been solicited by Mr. Mascarenhas. As the “proof’ of damages offered by Freeport was almost entirely hearsay, the evidentia-ry ruling of the district court admitting this evidence was legal error and should be reversed.
|12Although Mr. Mascarenhas was listed as both a fact witness and an expert on its witness list, Freeport did not seek to qualify him as an expert, which would have permitted him to give opinion testimony. Nevertheless, Freeport introduced all of its evidence of damages by having Mr. Mascarenhas rely upon hearsay opinions, given to him by “contractors” in various fields, in his testimony. By introducing evidence of its alleged damages through hearsay letters and out-of-court statements, Freeport prevented Cedyco from cross-examining any of these witnesses to expose or explore their possible bias, or to establish deficiencies in the methodology which led to their proposals.
Mr. Mascarenhas first testified regarding a proposal from Estis Well Service for the cost of plugging and abandoning both wells. Defense counsel objected to this evidence as hearsay. The district court initially stated that the witness could testify as to what he received, but that she was not sure whether the document would come into evidence.
Counsel for Freeport then sought to have Mr. Mascarenhas identify Exhibit 6, the written proposal from Estis Well Service. Counsel for Cedyco continued to raise objections, both to the content of the hearsay letter and to the out-of-court statements made to the witness. Nevertheless, in the end the district court allowed Mr. Mascarenhas to testify to the full extent of the information communicated to him by Estis, and Exhibit 6 of Free-port was admitted into evidence over the objection of Cedyco.
Mr. Mascarenhas was next asked to identify Exhibit 7, the proposal which he received from Kostmayer Construction for surface restoration to clean and remove the tanks. As was the case with the proposal given by Estis, the testimony of the witness, as argued by Cedyco, “made it clear” that Mr. Mascarenhas did not | ]Shave the expertise to come up with the monetary figure to do this work. Cedyco argues that the proposal was simply something that had been “written to” him.
Cedyco argues that the monetary figures contained in the various proposals were numbers that came out of the mouths of the absent witnesses, and that Mr. Mas-carenhas obviously did not have the necessary expertise or knowledge to come up with the numbers on his own, otherwise there would have been no need for the proposals and Mr. Mascarenhas could have simply testified as to what he thought the cost of the work would be. Thus, Cedyco argues that the district erred in admitting Exhibit 7 over its objection.
Exhibit 8, the proposal from Rennies Tractor Service for restoration of the sur *821 face sites by leveling the ground and cutting the grass, followed the same pattern as Exhibits 6 and 7. Mr. Mascarenhas was asked whether he had received a proposal from Rennies. Again, the objection of Ce-dyco was overruled, and Exhibit 8 was admitted into evidence.
Our review of the record establishes that the only items of damages introduced by Freeport which were not hearsay were the $7,000 supervision fee and the estimate of $5,000 to $10,000 for an environmental assessment. Both of these items were testified to by Mr. Mascarenhas based upon his own personal knowledge. Particularly, with regard to the environmental assessment costs, Mr. Mascarenhas stated “this is my rough estimate.”
However, this is in stark contrast with the testimony provided by Mr. Mascare-nhas regarding the other proposals, none of which were identified as being “his” estimates, or based upon “his” personal knowledge. Cedyco objected to the testimony of Mr. Mascarenhas and the documentary evidence which formed the basis for his testimony as being inadmissible hearsay.
| uFreeport also argued that the documents testified to by Mr. Mascarenhas were business records and were thus subject to an exception to hearsay objections.
Recently, we addressed the business records exception in Brooks v. Reimonenq, 2010-0296 (La.App. 4 Cir. 7/21/10), 44 So.3d 824. In Brooks, this Court wrote:
The Louisiana Code of Evidence defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.” La. C.E. art. 801(C). Hearsay is inadmissible at trial unless one of the exceptions in the Code of Evidence applies. La. C.E. art. 802. Generally, a trial court’s rulings on evi-dentiary issues will not be disturbed absent a clear abuse of discretion. Stewart v. Ice, 07-0871, p. 7 (La.App. 4 Cir. 4/9/08), 982 So.2d 928, 933 (citing Jones v. Peyton Place, Inc., 94-0574, pp. 11-12 (La.App. 4 Cir. 5/22/96), 675 So.2d 754, 763).
La. C.E. art. 803 provides the business records exception to the hearsay rule, stating in relevant part:
The following are not excluded by the hearsay rule, even though the de-clarant is available as a witness;
(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information | ir,or in circumstances under which the statement would not be excluded by the hearsay rule. The term “business” as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit. Public records and *822 reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.
It is well settled that the witness laying the foundation for admissibility of business records need not have been the preparer of the records. Finch v. ATC/Vancom Management Services Ltd. Partnership, 09-0483, p. 8 (La.App. 5 Cir. 1/26/10), 33 So.3d 215, 220. Under article 803(6), what is necessary is that a custodian or other qualified witness explain the record-keeping procedures of the business and thus lay the foundation for the admissibility of the records. Id. A qualified witness is one who has a familiarity with the record-keeping system of the business. Id. (citing State v. Juniors, 03-2425, p. 47 (La.6/29/05), 915 So.2d 291, 327).
Brooks, 2010-0296, at pp. 4-5, 44 So.3d at 827-28.
Therefore, based upon the Code of Evidence and jurisprudence it is clear that the district court had no competent evidence of damages before it. La. C.E. art. 802 provides that “hearsay is not admissible except as otherwise provided by this Code or other legislation.” Code of Evidence Article 801(C) defines hearsay as “a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted.”
Pursuant to Code of Evidence Article 801(A) a “statement” includes either oral or written assertions. State v. Joya, 354 So.2d 543 (La.1978); State v. Raymond, 258 La. 1, 245 So.2d 335 (1971). The hearsay rule excludes out of court statements which are offered to prove the truth of the matter contained therein. Id. As noted by the Supreme Court in Joya, there are several reasons underlying the hearsay rule. First, the out-of-court statements made by the person “testifying” | njhave been not made under oath. Second, the opposing party has no opportunity for cross examination of the witness making those statements in the presence of the trier of fact. State v. Joya, 354 So.2d at 545.
In the instant case, the testimony of Mr. Mascarenhas was offered by Freeport in lieu of the testimony of the representatives of the various contractors who had submitted proposals, namely Estis, Kostmayer and Rennies. Freeport was permitted to introduce evidence regarding the amounts of these various estimates by contractors without subjecting any of the individuals who actually submitted the estimates to cross examination. Thus, Cedyco’s had no opportunity to explore the basis for these estimates by contractors, the scope of the intended work. Furthermore, “[hjowever, it is well settled that a repair estimate is inadmissible hearsay which has no probative value in the absence of expert testimony from the witness who prepared the estimate.” Harris v. Hamilton, 569 So.2d 1, 4 (La.App. 4th Cir.1990), (citing Fairconetue v. Williams, 482 So.2d 198, 199-200 (La.App. 4th Cir.1986)).
Louisiana law defines personal knowledge as “something which the witness actually saw or heard as distinguished from something he learned from another person or source.” Dixon v. Evans Cooperage, Inc., 97-69, p. 5 (La.App. 5 Cir. 6/30/97), 697 So.2d 359, 362. Thus, the testimony of Mr. Mascarenhas regarding matters outside the scope of his personal knowledge, based upon information communicated to him by others, constitutes inadmissible hearsay. It is clear that the information testified to by Mr. Mascarenhas, namely the estimated cost of the various work, could only have been known by him as result of what he was told. Thus, whether *823 the evidence of the cost of the work was introduced through the letters or written estimates prepared by the contractors, or, as is the in the instant [ 17case, through the testimony of Mr. Mascarenhas, it was clearly hearsay and inadmissible. See Sims v. Liberty Mutual Ins. Co., 2004-584 (La.App. 8 Cir. 3/2/05), 897 So.2d 834, 840-41; LaRocca v. Burley, 303 So.2d 312, 315 (La.App. 4th Cir.1974).
Therefore, we find that the proposals of Estis, Kostmayer and Rennies were introduced in error since they are rank hearsay. Clearly, Mr. Mascarenhas did not have the personal knowledge to produce the figures presented in the proposals of Estis, Kostmayer and Rennies. Thus, the only admissible testimony of Mr. Mascare-nhas — based on his own personal expertise — was his reference to the $7,000 supervision fee and the estimate of $5000.00 to $10,000.00 dollars for an environmental assessment. We vacate the portion of the district court judgment which awarded Freeport $105,000.00 to plug and abandon the two wells, $74,300.00 for removal and cleaning of tanks, and $3,700.00 to restore land. We amend the district court judgment to reflect an award of $17,000.00, as this is the portion supported by admissible testimony.
In its second assignment of error, Cedyco argues that the district court erred in failing to enforce paragraph 19 of the lease which provides that no assignment of the lease by the lessor would be valid until 30 days after notice to the lessee.
As the landowner and lessor, Freeport brought this suit to enforce the obligor Cedyco to properly plug and abandon the two wells on Freeport’s land, and to have Freeport’s property at the well sites properly restored as required by Paragraph 12 of the two leases. The record indicates that both oil and gas leases at issue in this case contain a provision which strictly limits the effectiveness of any attempts to assign the rights of either the lessee or the lessor. In particular, paragraph 19 of the leases provides as follows:
|1sNo assignment, either in whole or part, of this lease shall be made by Lessee without the prior written consent of Lessor. The interest of Lessor may be assigned in whole or in part, but such assignment shall not be binding upon Lessee until thirty (30) days after Lessee shall have been furnished with a certified copy of the recorded instrument or instruments showing such change of ownership.
Cedyco maintained at the conclusion of the trial that Freeport had failed to establish that it was the successor in interest, through either merger or assignment, of the original lessor Freeport Minerals Company. Thus, as argued by Cedyco, Free-port did not prove that it was the proper party to sue to enforce the rights of the lessor under the leases in question.
At the post trial hearing held on July 24, 2009, Freeport was permitted to reopen the evidence in order to prove that it was the successor in interest to Freeport Mineral Company, and that it was a proper party to enforce the lessor’s rights under the oil and gas leases. Freeport called Mr. Marshall Page to testify and identify documents purporting to establish that Freeport is in fact the successor in interest to Freeport Mineral Company.
The testimony of Mr. Page illustrated how the ownership of the immovable property was transferred from Freeport Mineral Company to Freeport:
[t]he real estate that was in the name of Freeport Minerals- ended up making its way into Freeport Sulfur Company by way of a name change to Freeport Mineral Company. Following that Freeport Sulfur Company merged into Freeport *824 McMoran Inc. Following that in connection with the IMC Global merger we transferred the real estate from Free-port-McMoran Inc. into Freeport Research Partners, and from there, on the same day, transferred the real estate from Freeport Resource Partners to a newly formed entity, Freeport McMoran Sulfur, Inc. From there Freeport-Sulfur Inc. I think it was in 1998, merged into Freeport-McMoran Sulfur LLC, and then that company changed its name to Freeport McMoran Energy LLC.
119Cedyco argues that according to the testimony of Mr. Page, at least two “transfers” of the ownership of the underlying real estate occurred: the first from Free-port-McMoran Inc. into Freeport Research Partners, and the second, “on the same day” from Freeport Resource Partners to a newly formed entity, Freeport McMoran Sulfur, Inc. However, despite acknowledging the transfer by Freeport Mineral Company of the ownership of the underlying land, Cedyco argues that neither Mr. Page nor any other witness in this case provided any evidence demonstrating that Freeport or any of its predecessors in interest ever notified the lessees on the oil and gas leases of the assignments in question. Thus, Cedyco argues, Freeport failed to establish that any steps had ever been taken to comply with the requirements of paragraph 19 of the leases.
When Mr. Page was asked directly, “what about Hilliard .... was the lessee at any time ever given notice,” he testified that he didn’t “have any personal knowledge of any notice being given.” Cedyco argues that had notice been given to any of its predecessors in interest it would have been effective. However, Cedyco argues that Freeport introduced no evidence of notice of an assignment being given to any party.
Cedyco further argues that Freeport cannot pretend that the requirements of paragraph 19 do not exist. The lease provision unambiguously provides that the assignment of interest of the lessor “shall not be binding upon lessee” until after the lessee has been provided with a certified copy of the documents representing the change in ownership. Unless notice was given to some lessee, defendant Cedyco was under no obligation to recognize the interest claimed by the purported lessor, Freeport.
120La. C.C. art. 2046 addresses the interpretation of contracts and provides that “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” The rules of strict construction do not authorize the creation of ambiguities where none exist, and do not permit courts to modify contractual obligations when the language used by the parties it is clear. Fourroux v. Board of Com’rs for Orleans Levee District, 2002-0374, p. 6 (La.App. 4 Cir. 1/8/03), 837 So.2d 698, 702. The words of paragraph 19 of the oil and gas leases at issue in this case are clear and explicit and therefore the provisions of paragraph 19 should be enforced as written. Louisiana courts have repeatedly enforced the strict requirements of written notice provisions in mineral leases. Amoco Production Co. v. Texaco Inc., 2002-240, pp. 19-20 (La.App. 3 Cir. 1/29/03), 838 So.2d 821, 835; Lamson v. Austral Oil Co., 1997-1596, pp. 5-6 (La.App. 3 Cir. 6/10/98), 712 So.2d 1081, 1084.
Freeport argues that Cedyco is the successor lessee of the two Oil and Gas Leases, having acquired its interest in the leases in the summer of 1999. Particularly, Freeport argues that Cedyco became the operator of Plaquemines well on June 1, 1999, and that Cedyco became the opera *825 tor of Freeport Sulphur well, effective June 1,1999.
On October 31, 2002, Freeport wrote a letter to Cedyco indicating that because production had ceased in paying quantities on both leases, that Cedyco comply with its obligations to plug and abandon both the Plaquemines well and the Freeport Sulphur well and restore the land around the well locations. However, Cedyco took no action.
hi On May 16, 2008, counsel for Freeport again wrote to Cedyco to demand that it comply with its obligations to plug and abandon the two wells and restore the land around the well locations. Again, Cedyco took no action; rather, it responded that the two Oil and Gas Leases were being maintained by “partial production, well work and maintenance, and [a] force maj-eure.”
In response thereto, counsel for Free-port wrote to Cedyco on June 20, 2003, asking for detailed information regarding its unsupported representations that the two leases had not terminated. Still, Ce-dyco took no action. On August 4, 2003, counsel for Freeport wrote to Cedyco once again to request the information. Cedyco did nothing. On May 20, 2008, almost five years later, counsel for Freeport wrote to Cedyco, making final formal demand, requesting that Cedyco perform its obligations to plug and abandon the two wells and restore the land around the locations.
Based on the numerous communications sent to Cedyco in reference to the subject leases, Cedyco had requisite notice to be made aware that Freeport was seeking to enforce contractual obligations. The letters of October 31, 2002, and May 16, 2003, illustrate that at the very least Cedyco was put on notice that Freeport sought to enforce a purported contractual obligation. However, as illustrated by the record, Ce-dyco took no action until it was actually sued by Freeport. Therefore, we find that this assignment of error does not have merit.
In its third and final assignment of error, Cedyco argues that the district court erred in awarding $84,809 in attorney’s fees to Freeport. Cedyco argues that although trial courts are vested with considerable discretion in rendering awards of attorney’s fees, the courts of appeal are authorized to inquire into the reasonableness of an award of attorney’s fees, and where the award is clearly ^excessive or grossly out of proportion have a duty to intervene. Dinsmore v. Dhume, 561 So.2d 971, 973 (LaApp. 4th Cir.1990).
Cedyco argues that the award of the district court was excessive based upon several factors. First, if Freeport’s evidence of damages was largely based upon inadmissible hearsay, then the award of damages to Freeport should be reduced to $17,000.[7] Second, Cedyco argues that the work necessary to establish Freeport’s claim should have consisted of preparing a petition, filing a motion for partial summary judgment, filing a motion to compel and a motion for sanctions, followed by a short trial. Cedyco maintains that based upon the limited scope of the instant ease, the bill of counsel for Freeport of $84,000 for legal fees is disproportionate.
Third and finally, as alleged by Cedyco, much of the work performed by Freeport’s counsel was wasteful and unnecessary. Cedyco argues that some of the work, particularly Freeport’s opposition to the dilatory exception of venue filed by Cedy-co, and the subsequent writ application *826 filed in this Court, contained blatant and material misrepresentations. Additionally, Cedyco contends that a significant portion of the testimony of Ms. Parmelee was intentionally directed towards the question of the mineral royalties and elicited statements that were contradictory to the claims asserted in Freeport’s petition.
However, as was discussed in the second assignment of error, Cedyco failed to take any action to avoid being sued. Although Freeport sent correspondence to Cedyco several times seeking to enforce the terms of the lease agreement, it was to no avail.
12aOnce Cedyco was sued, it filed a pro se answer and shortly thereafter it filed numerous motions and exceptions. Cedyco even sought supervisory review from this Court after the district court denied its exception regarding venue. Each motion or exception filed by Cedyco required counsel for Freeport to take action in opposition. In addition, the district court was also forced to deal with the failure of Cedyco to participate in discovery during the pretrial period. In particular, Free-port filed a motion to compel discovery which the district court granted. However, due to the failure of Cedyco to comply with the order of the district court compelling discovery, Freeport filed a motion for sanctions against Cedyco, which was also granted by the district court. Eventually, after Freeport filed its motion to strike Cedyco’s answer, the district court grew tired of the shenanigans of Cedyco and ordered “alternative relief’ by barring Ce-dyco from presenting any witnesses or evidence of its own at trial. Thus, while Cedyco argues that it was prejudiced by the district court judgment awarding attorneys’ fees, Cedyco appears to have forgotten that its actions in the district court hindered the progress of the judicial process. Essentially, Cedyco was a recalcitrant defendant and the district court awarded attorneys’ fees based on the actions of Cedyco which interdicted the pretrial procedure.
Thus, based on our review of the record, the award of attorneys’ fees of $84,809.00 by the district court was a reasonable fee for the work product performed by counsel for Freeport in the instant case. This portion of the judgment is affirmed.

DECREE

Based on the foregoing, we vacate that portion of the district court judgment which: awarded Freeport (1) $105,000.00 to plug and abandon the two wells; (2) 1⅞4$74,300.00 for removal and cleaning of tanks; and (3) $3,700.00 to restore land, finding that Freeport failed to present competent evidence of damages. We amend the district court judgment to reflect an award of $17,000.00, as this is the portion of the judgment supported by admissible and competent testimony. In all other respects, the judgment of the district court is affirmed.
AMENDED IN PART; REVERSED IN PART; AFFIRMED AS AMENDED.

. The district court had previously set a discovery cutoff date for March 27, 2009.

. The written order relating to this decision was not entered until the date of trial, June 29, 2009.

. It was at the June 18, 2009 hearing that trial and appellate counsel Vincent Booth first enrolled as co-counsel for Cedyco.

. Venue involving a claim for rights in immovable property is governed by La. C.C.P. art. 80, which provides in pertinent part:
A. The following actions may be brought in the parish where the immovable property is situated or in the parish where the defendant in the action is domiciled:
(1) An action to assert an interest in immovable property, or a right in, to, or against immovable property, except as otherwise provided in Article 72.

. This subpart provides for venue in the parish where the immovable property is situated, in addition to any other venue provided for by law. This supplemental allowance by subpart 80(A)(3) allowed Freeport to claim that venue was proper in Orleans Parish pursuant to Article 76.1.2.

.Although Cedyco cited the CLK Co., L.L.C. v. CXY Energy Inc., 1998-0802 (La.App. 4 Cir. 9/16/98), 719 So.2d 1098, decision in support of its writ application to this Court. In CLK, a plaintiff corporation brought an action against a defendant corporation, alleging that the defendant had failed to convey to plaintiff a mineral royalty interest that was due under agreement. In the instant matter, Cedyco (the defendant) challenges the right of Free-port (the plaintiff) to assert a claim for mineral rights, thereby distinguishing CLK. The reason stated for the challenge was that Freeport had represented to this Court that its suit did not "assert any claim related to ... its ownership of the mineral rights.” Thus, unlike the plaintiff in CLK, Freeport, at least during the pendency of the venue dispute, had not asserted a claim for mineral royalties.

. Cedyco further contends that the existing award of attorney’s fees would be more than five times the amount of damages established by these attorneys’ "work product.”